FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR 23 2018 ★

BROOKLYN OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LOCAL 355 UNITED SERVICE WORKERS
UNION, INTERNATIONAL UNION OF
JOURNEYMEN AND ALLIED TRADES,
UNITED WELFARE FUND – SECURITY
DIVISION AND THE TRUSTEES THEREOF,
and UNITED WELFARE FUND –DIVISION        NOT FOR PUBLICATION
AND THE TRUSTEES THEREOF                  MEMORANDUM & ORDER
              Petitioners,                17-CV-262 (CBA) (ST)

       -against-

DUAL-PURPOSE CORPORATION,
              Respondent.
-----------------------------------------------------------x
```

**AMON, United States District Judge:**

Petitioners Local 355 United Service Workers Union, International Union of Journeyman and Allied Trades (the "Union"), and the United Welfare Fund – Security Division and the Trustees Thereof and the United Welfare Fund – Welfare Division and the Trustees Thereof (the "Funds") filed this action to confirm an arbitration award they won against Dual Purpose Corp. ("Dual Purpose") for its failure to remit dues to the Union and pay contributions to the Funds pursuant to the terms of a collective bargaining agreement ("CBA"). On May 12, 2017, petitioners sought to confirm their arbitration award by moving for default judgment, (D.E. # 12), and this Court referred that motion to Magistrate Judge Steven Tiscione for Report and Recommendation that same day, (D.E. dated May 12, 2017). On March 1, 2018, Magistrate Judge Tiscione issued a thorough and well-reasoned Report and Recommendation, recommending that the Court deny petitioners' motion. (D.E. # 75 ("R&R").) For the reasons stated below, the Court adopts the R&R as the opinion of the Court, grants petitioners leave to file an amended petition, and directs Dual Purpose to obtain counsel if it intends to further litigate this action.

1

## BACKGROUND

### I. The Collective Bargaining Agreements and Subsequent Arbitration

The Union entered into a CBA with Michael Hadjandreas, who held himself out as the vice president of Dual Purpose. (See D.E. # 1-Ex. B ("CBA") at 18.) The signature page reveals that the president of Dual Purpose, Steve Diamantakes, was supposed to sign the CBA, but his name was crossed out and replaced by Hadjandreas' name. (Id.) Under the CBA, Dual Purpose was obligated to withhold and remit membership dues to the Union. (Id. at 4.) The CBA also obligated Dual Purpose to contribute to the Funds. (Id. at 8–11.) The CBA incorporated the Declaration of Trust, which governs the administration of the Funds. (Id. at 11.) The Declaration of Trust imposes separate obligations on Dual Purpose, including requiring it to provide the Funds with any information that they need, and to allow the Funds to audit Dual Purpose's records when necessary. (See D.E. # 14-2 ("Declaration of Trust") at 20.)

The CBA "designate[d] Eugene Coughlin and J.J. Pierson as permanent arbitrators to alternately hear and decide every other grievance, beginning with Arbitrator Coughlin." (CBA at 6.) Despite alleging that Arbitrator Aaron Shriftman—who heard the instant arbitration—was validly designated pursuant to the CBA, (D.E. # 1 ("Pet.") at ¶ 9), petitioners now contend that the Declaration of Trust's provision permitting the Funds to "designate . . . an impartial arbitrator(s) to sit on a regular basis and conduct hearings for the purpose of adjudicating and enforcing payment of obligations of employers," licensed them to appoint Shriftman as the arbitrator, (D.E. # 19 ("Pet. Objs.") at 9). Petitioners further contend that the Funds have adopted their own "special rules" for arbitration and those "special rules" approved Elliott Shriftman, Aaron Shriftman, and J.J. Pierson as the arbitrators to hear and decide disputes between employers and the Funds

regarding an employer's failure "to pay fringe benefit contributions." (D.E. #14-3 ("Trust Policies") at 9.)

On January 12, 2016, the Union notified Aaron Shriftman about a dispute that had arisen with Dual Purpose over the company's failure to pay union dues and its contributions to the Funds. (D.E. # 1-Ex. A ("Arbitration Op.") at 1.) The Union sought $1,116 in back union dues and $41,038.67 to the Funds in back contributions. (Id.) Four days after receiving notice of the arbitration, Steve Diamantakes responded to petitioners on behalf of Dual Purpose, declaring that the Union had overcharged it and, in any event, the CBA was a nullity because the owner of Dual Purpose never signed it. (D.E. # 14-1 at 8–11.) After petitioners conducted an audit and sent an amended arbitration notice, Aaron Shriftman conducted the arbitration hearing on May 19, 2016. (Arbitration Op. at 1.) The Union and the Funds appeared, but Dual Purpose did not. (Id.) Arbitrator Shriftman found that Dual Purpose was bound by the CBA and the Declaration of Trust, (id. at 2), and Dual Purpose failed to remit union dues and pay contributions to the Funds, (id. at 4). He then entered an award for the amount requested by the Union and Funds in their second and final notice of dispute: $434.00 to the Union in unremitted membership dues, $22,409.00 in unpaid contributions to the Funds, $1,631.37 in interest on unpaid contributions to the Funds, and $4,481.80 in liquidated damages to the Funds. (Id. at 8.)

## II. Confirmation of the Arbitration Award

Petitioners initiated this action to confirm the arbitrator's award on January 18, 2017. (See Pet. at 6.) Dual Purpose never responded and petitioners thereafter moved for a default judgment on May 17, 2017. (D.E. #12.) Petitioners requested a judgment ordering the payments articulated in the arbitration award, in addition to an order that Dual Purpose pay for the $400.00 filing fee

and $60.00 cost for service. (D.E. # 12-2.) They also requested Dual Purpose be ordered to provide specified documents for an audit within 30 days. (Id.)

## III. The Report and Recommendation

As an initial matter, although not dispositive to the instant motion, the R&R began by properly recognizing that petitioners had failed to select the proper procedural device because "the Second Circuit has previously held that 'default judgments in confirmation/vacatur proceedings are generally inappropriate.'" (R&R at 8 (citing D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006)).) Instead, the R&R properly analyzed petitioners' motion under the standards for summary judgment. (Id.; see also D. H. Blair, 462 F.3d at 109 (["T]he petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions.")); Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund, Charity Fund v. Nport Const. Corp., No. 11-CV-6263 (TPG), 2012 WL 77872, at *1 (S.D.N.Y. Jan. 10, 2012) ("Where a party fails to respond to a motion for a default judgment in the context of a petition to confirm an arbitration award, the motion for default judgment should be construed as an unopposed motion for summary judgment."). Applying that standard, the R&R recommended that petitioners' motion be denied because material issues of fact remained on two critical issues. (Id.) First, the R&R found that a genuine issue of material fact existed about whether Dual Purpose was bound by the arbitration clause because evidence showed that Dual Purpose had challenged the CBA's formation. (Id. at 11 (citing D.E. # 14-1 at 10 ("This contract has been challenged in its entirety as it was NOT SIGNED by the owner.")).) The R&R found that there was some support for Diamantakes' position because his name had been manually crossed out in the CBA and replaced by Hadjandreas' name and signature. (Id.) Accordingly, the R&R denied petitioners' motion

4

because Magistrate Judge Tiscione found that they had failed to establish that the CBA—the agreement that created the parties' relationship and required these disputes to be arbitrated—was ever formed. (Id.) The R&R recommended that petitioners' motion be denied without prejudice so that they could submit evidence establishing what authority Hadjandreas had to execute the CBA on behalf of Dual Purpose. (Id.)

Second, Magistrate Judge Tiscione found that petitioners had arbitrated before Aaron Shriftman, but, contrary to petitioners' allegations, the CBA had designated Eugene Coughlin and J.J. Pierson as the exclusive arbitrators to hear disputes between the parties. (Id. at 13.) Therefore, the R&R recommended that petitioners' motion be denied without prejudice so that they could submit evidence demonstrating that Dual Purpose had agreed to arbitrate before Shriftman. (Id.)

## IV. The Parties' Objections

Despite the favorable result and its prior failure to appear in this action, Dual Purpose filed objections to the R&R. (D.E. # 18 ("Dual Purpose Objs.").) Those objections were filed by Diamantakes and, although they are labeled as objections, they support the R&R's conclusion that there is a material dispute as to contract formation and a question as to who was the appropriate arbitrator. Diamantakes stated that the CBA was never formed because he did not sign it, Arbitrator Shriftman was not the arbitrator provided for in the CBA, Michael Hadjandreas was not the vice-president of Dual Purpose, Diamantakes is "currently under hardship," and "if [he] is required to use an attorney, [he] will need 60 to 90 days to find one." (Id.) He further stated that "an ex-employee named Michael Hadjandreas is being sued for embezzling hundreds of thousands of dollars from Dual Purpose." (Id.)

Petitioners filed objections to the R&R. (D.E. # 19 ("Pet. Objs.").) Although petitioners objected to the R&R's two bases for denying their motion, they agreed with the R&R's conclusion

5

that they needed leave to replead because they "recognize[d] that they mistakenly pleaded that arbitrator Aaron Shriftman was the arbitrator named in the collective bargaining agreement." (Id. at 11.) Accordingly, petitioners requested that this Court adopt the R&R's recommendation that they be given leave to re-file the petition so they could "delineate the factual and legal basis for the appointment of arbitrator Aaron Shriftman." (Id.)

## STANDARD OF REVIEW

To the extent that a party makes specific objections to a magistrate judge's findings, the court must make a de novo determination. Arista Records, LLC v. Doe, 604 F.3d 110, 116 (2d Cir. 2010); Fed. R. Civ. P. 72(b). In reviewing a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). "In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." Illis v. Artus, No. 06-CV-3077 (SLT) (KAM), 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (quoting Sci. Components Corp. v. Sirenza Microdevices, Inc., No. 03-CV-1851 (NGG) (RML), 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006)).

## DISCUSSION

In light of petitioners' objections, the Court has undertaken a de novo review of the full record, including the applicable law, the underlying record, the parties' submissions on the instant motion, the R&R, and petitioners' objections to the R&R. See 28 U.S.C. § 636(b)(1)(C). The Court first considers petitioners' objections to the R&R's two bases for denying their motion and then turns to Dual Purpose's submission.

6

## I. The R&R Properly Considered Whether the CBA Was Formed

Petitioners argue that this Court should reject the portion of the R&R that found they had failed to establish the formation of the CBA because this was a question for the arbitrator to decide, and the arbitrator found that Dual Purpose was bound by the CBA. (Pet. Objs. at 3.) For support, they rely on the Supreme Court's decision in Buckeye Check Cashing Inc. v. Cardenga, 546 U.S. 440 (2006), for the proposition that when a party "challenges the contract as a whole, the arbitrator, and not the court should consider such challenges." (Id. at 4.) According to petitioners, this is in contrast to circumstances where a party challenges the arbitration clause alone. (Id.)

Petitioners correctly state the rule adopted by the Supreme Court in Buckeye Check Cashing that the responsibility to determine the validity of the overall contract, e.g., whether the contract was procured by fraud, is assigned to the arbitrator while challenges to the arbitration clause itself, e.g., whether the arbitration clause itself was procured by fraud, normally remain with the court. However, the distinction drawn by Buckeye Check Cashing does not pertain to the question before this Court: whether a contract was ever formed. Indeed, petitioners' reliance on Buckeye Check Cashing is puzzling because the Supreme Court in that case expressly recognized that the opinion did not apply to these circumstances:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.

546 U.S. at 444 n.1. In a case that petitioners neglect to cite, the Supreme Court resolved that issue a few years later in Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287 (2010). In Granite, the Court stated that "[i]t is similarly well settled that where the dispute at

7

issue concerns contract formation, the dispute is generally for courts to decide." Id. at 296. Thus, not only did the Supreme Court in Buckeye Check Cashing expressly withhold judgment on the issue that petitioners contend that it decided in their favor, the Supreme Court ruled against their position a few years later in Granite. Accordingly, the R&R was correct in its determination that "court must decide whether a contract exists." Janiga v. Questar Capital Corp., 615 F.3d 735, 742 (7th Cir. 2010); see also John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 53 (2d Cir. 2001). This rule does not preclude review of this question by a court in a confirmation proceeding, notwithstanding an arbitrator's prior finding that an agreement was formed. See Braggs v. Jones, 614 F. App'x 901, 904 (9th Cir. 2015) ("The district court should have applied that ordinary rule and made a factual finding for itself, without reference to the arbitrator's findings, regarding whether a contract existed between the parties. Its failure to do so was error."); Astra Oil Co., LLC v. Hydro Syntec Chems., Inc., No. 13-CV-8395 (ALC), 2014 WL 630676, at *3 (S.D.N.Y. Feb. 18, 2014). Therefore, this Court adopts the R&R's conclusion that it was proper for this Court to decide whether the CBA was ever formed.

Petitioners next argue that even if the R&R's inquiry into the existence of the CBA was proper, its conclusion that genuine issues of material fact exists about whether Dual Purpose agreed to it was error because Dual Purpose's conduct demonstrated there was an agreement between them. (Pets. Objs. at 7.) Specifically, petitioners argue that Dual Purpose made contributions to the Funds and submitted union dues as required to under the CBA. (Id.)

Petitioners are correct that, in some circumstances, the Second Circuit has found that employers have adopted collective bargaining agreements where the union demonstrated that the employer routinely acted in compliance with such an agreement by regularly paying fees and remitting dues to the union. See Brown v. C. Volante Corp., 194 F.3d 351, 354–55 (2d Cir. 1999).

8

For example, in Brown, the Second Circuit found the following sufficient "to establish as a matter of law appellant's intent to adopt the two unsigned CBAs": "sixty-one remittance reports—most of which were expressly submitted in accordance with the terms of the CBAs—appellant's cooperation with the audit, its payment of union wages to employees, and Volante's letter to the Trustees acknowledging appellant's 'responsibility to the funds.'" Id.

Here, petitioners have failed to provide a similar documentary record demonstrating that Dual Purpose had adopted the CBA through its conduct. Although Diamantakes' letter to the Union complaining that Dual Purpose had been overcharged in union dues is certainly suggestive of conduct in conformity with the CBA, it falls short of the conduct accepted in Brown. Instead, in a footnote, petitioners offer only the unadorned statement that they "confirmed . . . that Dual Purpose consistently made Funds contributions in the amounts required by the Agreement, and also remitted Union dues during the first two years of the Agreement." (Pet. Objs. at 7 n.1.) That unsupported statement cannot cure the factual issue created by Dual Purpose's challenge to whether the CBA was ever properly formed. Accordingly, the Court adopts the R&R and directs petitioners to amend their petition to include proof that Dual Purpose consistently acted consistent with the CBA by making contributions to the Funds and paying dues to the Union.

## II. A Genuine Issue of Fact Exists About Whether the Arbitration Was Before the Proper Arbitrator

Even if petitioners had established the CBA's validity, they concede that issues of fact remain on whether the appointment of Aaron Shriftman as arbitrator was proper under that agreement. The only way they suggest they might be able to eventually demonstrate that his appointment was valid is through three degrees of separation from the CBA: (1) The CBA incorporates the Trust Agreement; (2) The Trust Agreement provided the Funds with "sole discretion" to designate an arbitrator to "hear disputes over delinquent contributions and failures

to permit an audit"; and (3) The Funds' "special policies" mention Aaron Shriftman. (Pet. Objs. at 9.) But, whatever the force of this argument, petitioners implicitly concede that it is insufficient to carry their burden. (Id.) Indeed, petitioners agree with the R&R by acknowledging that they "mistakenly pleaded that Arbitrator Aaron Shriftman is . . . the arbitrator listed in the CBA." (Id.) Moreover, in recognition of that mistake, petitioners also agree with the R&R's conclusion that "they be given leave to re-plead the specific facts and circumstances establishing [Shriftman's] authority to render a final and binding award." (Id.) In other words, petitioners are not seeking to overturn the R&R's conclusion that the petition cannot be confirmed based upon the current record. Accordingly, the Court adopts the R&R and grants petitioners leave to replead within 30 days facts establishing the validity of both the CBA and appointment of Aaron Shriftman as arbitrator.

### III. Dual Purpose's Submission

Although Diamantakes' submission on behalf of Dual Purpose is to some extent supportive of the R&R, the Court has not considered it in its analysis since Diamantakes may not represent the corporation pro se. The Second Circuit has held that "it is well-settled law that a corporation may appear in the federal courts only through licensed counsel . . . ." Grace v. Bank Leumi Tr. Co. of N.Y., 443 F.3d 180, 187 (2d Cir. 2006); see also Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001) ("As a corporation, appellant, Galaxiworld, could only appear with counsel."); Bell v. S. Bay European Corp., 486 F. Supp. 2d 257, 260 (S.D.N.Y. 2007) ("[A] lay person may not represent an entity."). Thus, Dual Purpose must litigate this action though counsel. Perhaps in recognition of this well-settled rule, Diamantakes requests that he be given "60 to 90 days to find" counsel. (Dual Purpose Objs. at 1.) His request is granted in part: Counsel for Dual Purpose shall file a notice of appearance within 60 days of this Order. Should petitioners amend

their petition, Dual Purpose's time to answer is adjourned until 30 days after its counsel files a notice of appearance.

## CONCLUSION

For these reasons, the Court adopts the R&R. Petitioners are granted leave to file an amended petition to confirm the arbitration award within 30 days of this Order. Counsel for Dual Purpose shall file a notice of appearance within 60 days of this Order.

SO ORDERED.

Dated: March 22, 2018
Brooklyn, New York

s/ CBA

_____
Carol Bagley Amon
United States District Judge